BIDWELL AND WALDBY, Appellants, *v.* THE ST. LOUIS FLOAT-
ING DOCK AND INSURANCE COMPANY, Respondent.

1. *Insurance—Policy.*—A policy was sent to the assured with a note for the
premium to be signed by the assured and endorsed by a responsible en-
dorser; it being understood that until the note was returned the policy did
not take effect. *Held,* that the execution of the note was a condition pre-
cedent to the taking effect of the policy ; and that the parties to whom the
sum insured was payable in case of loss, could have no greater right than
the party under whom they claimed.
2. *Witness—Evidence.*—The assignor of a policy of insurance is a competent
witness to prove that there was no consideration for the assignment—Perry
et al. v. Siter et al., 37 Mo. 273.

### Appeal from St. Louis Circuit Court.

This suit was brought by the plaintiffs, as assignees of John
Scott, to recover the amount of a policy for $2,000, issued
by the defendant. The policy provided that in the event of
loss the proceeds should be paid to plaintiff.

The following instructions were refused by the court in
behalf of plaintiff:

1. The jury are instructed that it is totally immaterial to
the merits of this controversy whether or not John Scott
owes Bidwell and Waldby anything; and if they shall find
from the evidence that there was a loss sustained under the
policy, they are instructed that the plaintiffs, and the plain-
tiffs alone, can recover the same in this action.

2. If the jury find for plaintiffs, they will assess as dam-
ages the amount of the loss sustained by the boat by means
of the disaster complained of (not exceeding, however, two
thousand dollars), and deducting therefrom the amount due
the insurance company for premium, calculate interest on
the balance at six per cent. since the commencement of this
suit, to wit, till the present date.

And to which refusal plaintiffs then and there duly ex-
ceped.

The following were given by the court at the instance of
defendant:

1. If from the evidence the jury find the facts to be, that the policy sued on was made by defendant's agent upon the condition that it was inoperative unless $340 as premium money was paid or secured to be paid by negotiable note, with a solvent endorser thereon, due and payable in nine months from the date of the policy; and that such premium money has not been paid, or secured to be paid, as above stated, the law upon such facts forbids a recovery by plaintiffs.

2. If John Scott got possession of said policy, and held the same subject to the giving of a premium note therefor with a good endorser, and said policy was only delivered, or authorized to be delivered to Bidwell & Waldby on condition that they endorsed such note, and Bidwell and Waldby obtained the same contrary to such condition and without complying with it, and without the authority or sanction of the insurance company or of said Scott, and no such premium note was ever given, then the jury should find for the defendant.

3. If from the evidence the jury find that at the time said steamer sank she was in possession of Scott, the assured, and so continued until he converted her furniture, machinery, &c., to his own use or that of his creditors; and while thus in possession, defendant, by its agent, with the assent of Scott, made an effort to raise and repair said steamer, such effort and failure on the part of defendant does not constitute an abandonment on the part of Scott, or an acceptance thereof by defendant.

4. The court instructs the jury that, by the terms of the policy sued upon, it was the duty of the assured, his factor and servants, to use every practicable effort for the safeguard and recovery of said boat; and unless the jury find from the evidence that at the time and after the misfortune to said boat, the assured, his factors and servants, did use every practicable effort for the safeguard and recovery thereof, then the jury will find for the insurance company.

5. If the jury find from the evidence that at the time of

the disaster to the "New Wm. Bell," she was not provided with a sufficiency of ropes, tackle and rigging for the safe navigation thereof; and that by the proper use of such ropes, tackle and rigging she could, after she sank, have been raised with a loss of less than two hundred and fifty dollars, then the jury will find for the insurance company.

6. Unless the jury find from the evidence that after the misfortune happened to said boat, and at a time at least sixty days before the commencement of this suit, proof of such loss and of the interest of said Scott in and to said boat, and adjustment, were exhibited to the insurance company, then plaintiffs cannot recover herein, unless defendant in some manner waived such proof and notice.

And to which plaintiffs then and there duly excepted.

*A. J. P. Garesché*, for appellants.

*Rankin & Hayden*, for respondent.

WAGNER, Judge, delivered the opinion of the court.

This was an action on a policy of insurance on the steamboat New Wm. Bell, by which John Scott was insured in the sum of not exceeding $5,000 ; loss, if any, payable to Bidwell and Waldby, the appellants. The respondent in its answer alleged several breaches of the conditions of the policy, and also stated that Scott obtained possession of the policy of insurance on the terms and agreement that he would make and deliver to respondent his negotiable note, with the name of a solvent endorser thereon, at nine months, for the sum of $340, being the premium for said insurance at the rate of seventeen per centum on $2,000, and that the said policy was not to be valid or binding until the said condition and agreement were complied with. It is further stated that the said Scott violated said agreement; that he failed, neglected and refused to deliver his note endorsed as aforesaid, and failed to pay or secure the premium, or any consideration, for the said policy of insurance. Respondent therefore says it never received any consideration for the

policy; that it never insured Scott in the sum of two thousand dollars on the steamboat New Wm. Bell, and that it never delivered the said policy to the appellants.

Respondent, before filing its answer, petitioned the court to compel Scott to appear and interplead, stating that he claimed that the policy belonged to him. The court made the order, and Scott entered his appearance and filed his interpleader, in which he stated, that it was true as averred in the answer that the policy was issued in the manner therein stated, payable to the appellants; but he said that appellants gave no consideration therefor, and were not entitled to the possession thereof nor to any damages thereon, and asked the court to make an order that the policy might be delivered up and assigned to him.

Upon the trial the respondent introduced Scott as a witness, against the objection of appellants' counsel, who testified, among other things, that at the time the policy was signed by the respondent he resided in St. Paul, in the State of Minnesota; that he wrote from there to his agent in St. Louis to have a policy taken on his boat for $2,000 risk; his instructions to his agent were to have the proceeds of the risk made payable to the appellants, in order that he might obtain their endorsement on the premium note to the insurance company; he knew at the time that the regulations of the company required such endorsed note before it would issue the policy; he had been a director and was familiar with its way of doing business. At St. Paul he received a letter from his agent enclosing the policy and premium note, names of maker and payee in blank; he signed the note as maker, and gave the two papers (policy and note) to his clerk and requested him to take them to appellants, and if they filled the notes with their names as payees and endorsed the same, to deliver the policy to them and return the note, otherwise to retain both of the papers. Appellants refused to endorse the premium note, and kept both papers. That at the time he did not owe them anything; that the policy was never assigned by him to them,

and that they never paid him any consideration therefor; that the policy was taken out by his agent on condition that he executed and delivered to the company a negotiable note with a good endorser, which was never done.

Felters, the secretary of the insurance company, swore to substantially the same facts as to the terms and conditions on which the policy was issued, and that no note had ever been executed and delivered. The verdict and judgment were for the respondent.

It is now insisted by the counsel for the appellants, that the delivery of the policy by Scott to the appellants operated as an assignment to them, and that Scott was an incompetent witness, and they were entitled to recover. If the policy had been valid and regular, and was deposited to secure a debt owing by the assured, it would undoubtedly have had the effect to create a lien in their favor; for, where the assured deposits a policy of insurance as security for a debt, it gives the creditor a lien on the proceeds of the policy, which is binding upon the underwriters and upon the assured, and upon all those who claim an interest with notice of such lien —Ellis v. Kreutsinger, 27 Mo. 311; 1 Phil. on Ins. § 98; 2 Duer on Ins. § 36;—and this would be so, although the policy contained a clause prohibiting an assignment without the consent in writing of the company. And a policy like the one in this case, insuring a certain person and making the loss, if any, payable to another person, may be regarded as having been assigned, at its inception, with the assent of the company — Nat. Fire Ins. Co. v. Crane, 16 Md. 260; Brown v. Roger Wms. Ins. Co., 5 R. I. 394; but the assignee in such case can have no greater or superior rights than the assured.

In the case of Wallingford v. Home Mut. &c. Ins. Co., 30 Mo. 46, the charter of the insurance company declared that the applicant for insurance should, before he received his policy, deposit his promissory note, &c.; a part, not exceeding ten per cent., of which should be immediately paid. The by-laws provided that policies should take effect at 12 o'clock,

noon, on the day of approval at the office of the company, and should be binding thereafter, provided the premium or ten per cent. tax on the premium note had been paid, and that ten per cent. of the premium note should be paid in all cases and endorsed on the policy. It was held that the giving of the note and the payment of the prescribed ten per cent. were conditions precedent to the taking effect of the policy.

So in the case of Grosvenor v. Atlantic Fire Ins. Co., 17 N. Y. 391, the action was upon a policy whereby the defendant did "insure Eugene W. McCarty against loss or damage by fire, to the amount of $7,000, on his brick dwelling-house, &c., until November 14, 1854. Loss, if any, payable to Seth Grosvenor, mortgagee." The policy contained a condition that in case of any transfer, or termination of the interest of the assured in the property insured on in the policy, either by sale or otherwise, without the consent of the company manifested in writing, the policy should from thenceforth be void. Previous to the destruction of the property by fire, McCarty, the person named in the policy as the assured, sold and conveyed the property. The Court of Appeals decided that as the policy named the owner of the property as the person insured, and declared the damages in case of loss to be payable to another person therein named as mortgagee, the latter could not recover in case of a breach of the conditions of the policy by the mortgagor.

In the case here the policy was issued on the express condition that the insured should execute his negotiable note to the company with a solvent endorser; the condition was never complied with, and the policy therefore never had any binding effect. Scott, by his failure and neglect to execute his part of the contract, by non-complying with the conditions, lost all benefit in the policy, and the right of the appellants being wholly derivative, cannot exceed the right of the party under whom they claim—Grosvenor v. Ins. Co., 17 N. Y., *supra;* Carpenter v. Providence Ins. Co., 16 Pet. 495; Foster v. Equitable Fire Ins. Co., 2 Gray, 216.

The court committed no error in allowing Scott to testify. He was not disqualified by the statute, and his evidence was clearly admissible within the principle laid down in this court in Perry et al. v. Siter et al., 37 Mo. 273.

We see no merits exhibited in the motion for a new trial. It is difficult to perceive how the evidence could have worked a surprise on the party, as it was incontestably legitimate under the pleadings. If the amended answer was filed but a brief time before the trial, and the appellants' counsel was unable to meet the issues presented without rebutting testimony, and the time was too short to procure it, he should have moved the court for a continuance. There is nothing in the affidavits justifying our interference. Certain facts are deposed to on one side, and positively denied on the other; such being the case, we cannot overrule the discretion of the lower court.

From the view of the case we have have taken, there is nothing exceptionable in the instructions. Wherefore the judgment is affirmed. The *other judges* concur.